**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | No. 09-04199MP-001-PCT-MEA |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Leon Henry Keyes III, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Before the Court is the Government's Motion for Determination of Counsel. The government asserts that while it is not privy to defendant's sealed CJA Financial Affidavit, contact with defendant's employer leads the government to question whether defendant is indigent for the purposes of court appointed counsel. Defendant counters that the government has delayed too long in bringing its request before the Court and speculates that to in essence rock the boat at this time would result in "a quagmire of constitutional concerns" under the Fifth and Sixth Amendments. Defendant also asserts that should the Court reopen the issue of defendant's appointment of counsel it should do so *in camera* and *ex parte*. The government replies that it brought the information to the Court's attention in a timely manner as soon as it obtained the information.

The tension presented by a defendant asserting his Fifth and Sixth Amendment rights in the appointment of counsel context and the public's and the government's right of access to a defendant's CJA Financial Affidavit and related information has been the subject of

considerable litigation amount the federal courts. A detailed discussion of the respective positions of the Circuit Courts of Appeal can be found in United States v. Hilsen, 2004 WL 2284388 (S.D.N.Y. 2004). There is far from unanimity in the approach to be taken in resolving the tension.

**Analysis**

With the passage of the Criminal Justice Act of 1964, the District Court for the District of Arizona enacted its own plan for the administration of that act. See Plan for the United States District Court for the District of Arizona, Pursuant to the Criminal Justice Act of 1964. The plan provided, in pertinent part:

> All statements made by such person in such inquiry shall be either under oath in open court or by affidavit sworn to before the District Judge or the United States Magistrate in open court or in camera in the discretion of the United States District Judge or Magistrate. All testimony or other information submitted by the defendant in camera either orally or in writing shall be placed under seal until the final disposition of the case in the District Court, subject to further order of the court, and until unsealed on order of the court shall not be revealed without the consent of the defendant.

On May 7, 2007, the District of Arizona's plan for appointment of counsel was extensively amended. See General Order 07-08. The previous language was deleted and the following language was substituted:

> The determination of eligibility for representation under the CJA is a judicial function to be performed by a judge after making appropriate inquires concerning the person's financial condition. Such inquires can be held *in camera, ex parte*, or under seal, at the discretion of the judge.
> (General Order 07-08, Att. at p.3)

The amendment reflects the lack of unanimity among the courts as to the proper approach to be followed in resolving the issue. The matter of sealing or not sealing the defendant's financial information and the nature of the inquiry (*in camera* or adversarial) is left to the discretion of the trial court.

In United States v. Peister, 631 F.2d 658, 662 (10th Cir. 1980) the court indicated:

> Peister's claim of Fifth Amendment protection against self-incrimination is based on the assumption that the execution of the financial disclosure would incriminate him. On the record presented, we do not know whether or not it would or would not. We know neither the financial ability of the defendant nor what use, if any, might ever be made by the government of the defendant's statements with regard to financial ability. The burden is on defendant to

- 2 -

demonstrate financial inability in order to obtain counsel. United States v. Ellsworth, 547 F2d 1096 (9th Cir.), cert. denied 431 U.S. 931 (1977). We hold the defendant should not be relieved of this burden when <u>any conflict for protection will come when, if ever, the government attempts to use the information against the defendant at trial</u>. We are not willing to assume that the government will make such use or if it does, that a court will allow it to do so [Emphasis added]

Subsequent to Peister the 10th Circuit summarized the then current state of the law in United States v. Hardwell, 80 F. 3d 1471, 1483-84 (10th Cir. 1996) as follows:

> In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that a defendant's testimony at a suppression hearing to establish standing to object to a search cannot be used against him at trial to establish guilt because otherwise, the defendant would be required to choose between the Fourth Amendment right to be free from unreasonable searches and the Fifth Amendment right against self incrimination. The Court has limited Simmons in some respects, see McGautha v. California, 402 U.S. 183, 211, 212, 91 S.Ct. 1454, 1469-70, 28 L.Ed.2d 711, 1971), but has not ruled on whether statements made by a defendant to establish eligibility for appointed counsel are admissible at trial as proof of guilt. See United States v. Kahan, 415 U.S. 239, 242-43, 94 S.Ct. 1179, 1180-81, 39 L.Ed.2d 297 (1974).
>
> Several Circuits have followed the reasoning of Simmons and held that a defendant is entitled to some sort of protection against the use of financial disclosures made to establish eligibility for appointed counsel. In the absence of some protection, a defendant would be forced to choose between the Sixth Amendment right to counsel and the Fifth Amendment right against self incrimination. [Citations Omitted] Some courts have held that this protection may be offered before trial, either by granting the defendant use immunity or by conducting the indigence hearing in camera and sealing the record. See Gravatt, 868 F2d at 590.
>
> In United States v. Peister, 631 F.2d 658, 661-62 (10th Cir. 1980), cert. denied, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981), this circuit rejected the pretrial protection approach without resolving whether use of a defendant's financial affidavit and other statements made to obtain appointed counsel violates the Fifth Amendment.

In Seattle Times v. United States District Court, 845 F2d 1513, 1518 (9th Cir. 1988) the court stated:

> Although not emphasized by the parties, the district court refused to unseal the financial affidavits on the ground that unsealing would violate Nickell's fifth amendment rights. The fifth amendment prevents the states from compelling the accused to make a testimonial communication that is incriminating. See Fisher v. United States, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1975). To claim the privilege, the accused must be faced with substantial hazards of self-incrimination that are "real and appreciable" and not merely "imaginary and unsubstantial." United States v. Neff, 615 F.2d 1235, 1239 (9th Cir. 1980).

- 3 -

> The district court's determination here was based on an assumption that unsealing the financial affidavits would tend to incriminate Nickell. <u>This assumption is premature. We do not know what use, if any, the government will try to make of the information contained in the affidavits. Therefore, any fifth amendment problem is at this juncture speculative and prospective only.</u> We agree with the Tenth Circuit that "[t]he time for protection will come when, if ever, the government attempts to use the information against the defendant at trial," <u>United States v. Peister</u>, 631 F.2d 658, 662 (10th Cir. 1980), or if the government attempts to use any information derived from the facts revealed in the affidavits. [Empasis added]

Likewise, in <u>United States v. Hitchcock</u>, 992 F.2d 236, 239 (9th Cir. 1993) the court indicated:

> As to the third guideline, the district court did not clearly err as to the law. The Ninth Circuit has not decided the amount of protection such financial disclosures must receive. Other circuits agree that some sort of protection is necessary for the financial disclosures made to obtain appointed counsel. They do not, however, uniformly require the court to articulate the scope of protection before trial, shield the information from the prosecution, or prohibit all prosecutorial use of the information. See, e.g., <u>United States v. Sarsoun</u>, 834 F.2d 1358, 1364-65 (7th Cir. 1987); <u>United States v. Harris</u>, 707 F.2d 653, 662-63 (2d Cir.)(prohibiting use of information in prosecution's "direct" case), <u>cert. denied</u>, 464 U.S. 997, 104 S.Ct. 49578 L.Ed.2d 688 (1983); <u>United States v. Peister</u>, 631 F.2d 658, 661-62 (10th Cir. 1980), <u>cert. denied</u>, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). Moreover, the parties agree that <u>Simmons v. United States</u>, 390 U.S. 377, 390 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968), governs this case by analogy, and some courts have held that the government may use <u>Simmons</u> information for limited purposes. See <u>United States v. Salvucci</u>, 448 U.S. 83, 93-94 & nn. 8 & 9, 100 S.Ct. 2547, 2553-54 & nn. 8 & 9, 65 L.Ed.2d 619 (1980) (citing cases but not deciding the issue); <u>Porretto v. Stalder</u>, 834 F.2d 461, 466-67 n. 7 (5th Cir. 1987). In short, the law requires protection but does not clearly determine the protection's timing or extent.

> The district court's order fell within these contours. It did not deny protection altogether. The court denied "immunity," <u>but this term apparently referred to the defendants' broad request to seal the affidavits and prevent any government use of them at all; this broad protection was not clearly required</u>. Moreover, it seems unlikely that the district court will fail to grant some protection; the parties apparently agree that the financial information is protected by <u>Simmons</u> and disagree only as to which, if any, governmental uses are permitted. With the law unsettled as to timing and extent of the protection, denying blanket use immunity was not clearly erroneous under the third guideline, and we express no opinion whether it was error at all. [Emphasis added]

Since <u>Seattle Times</u> and <u>Hitchcock</u>, the Ninth Circuit has repeatedly reaffirmed a presumed public common law of right of access to court documents. See <u>Phoenix Newspapers v. U.S. Dist. Court</u>, 156 F3d 440, 946 (9th Cir. 1998); <u>Copley Press, Inc. V. Higuera-Guerrero</u>, 518 F.3d 1022, 1029 (9th Cir. 1008).

- 4 -

| | |
|---|---|
| 1 | **<u>Conclusion</u>** |
| 2 | The Court concludes that in balancing the interests at issue contested appointments |
| 3 | of counsel under the CJA Act are best decided in an adversarial proceeding.  <u>See</u> <u>United</u> |
| 4 | <u>States v. Harris</u>, 707 F.2d 653, 662-63 (2nd Cir. 1983).  It is only through this process that the |
| 5 | accuracy of the information provided by the defendant can be accurately tested.  However, |
| 6 | with the rapidly approaching trial date, the limited judicial resources available, the Court's |
| 7 | congested calendar and to avoid any potential constitutional "quagmire" the propriety of the |
| 8 | appointment of counsel will not be addressed at this time. |
| 9 | **IT IS ORDERED GRANTING** the Government's Motion for Determination of |
| 10 | Counsel. |
| 11 | **IT IS FURTHER ORDERED** that at the conclusion of these proceedings, a copy of |
| 12 | defendant's sealed CJA Financial Affidavit shall be provided to the government and an |
| 13 | adversarial proceeding set to determine the propriety of appointment of counsel.  At the |
| 14 | conclusion of the hearing the Court will determine whether the defendant shall be ordered |
| 15 | to repay all or a portion of the cost of his representation and defense.  <u>See</u> 18 U.S.C. |
| 16 | §3066A(c). |
| 17 | DATED this 4th day of December, 2009. |

_____
Mark E. Aspey
United States Magistrate Judge